# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

**NEW ENGLAND GEN-CONNECT, LLC,**

Plaintiff,

v.

**US CARBURETION, INC.,**

Defendant.

**Case No. 1:16-cv-12270**

---

## DEFENDANT US CARBURETION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Benjamin P. Lajoie, BBO # 693715
blajoie@baileyglasser.com
**BAILEY & GLASSER LLP**
99 High Street, Suite 304
Boston, MA 02110
Telephone: (617) 439-6730
Facsimile: (617) 951-3954

Brian A. Glasser (admitted *pro hac vice*)
bglasser@baileyglasser.com
**BAILEY & GLASSER LLP**
1054 31st Street, NW, Suite 230
Washington, D.C. 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

Marc R. Weintraub (admitted *pro hac vice*)
mweintraub@baileyglasser.com
**BAILEY & GLASSER LLP**
360 Central Avenue, Suite 1500
St. Petersburg, FL 33701
Telephone: (727) 894-6745
Facsimile: (727) 894-2649

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ...................................................................................................1

II.     PLAINTIFF'S FACTUAL ALLEGATIONS ................................................3

III.    ARGUMENT.........................................................................................................4

    A.    Gen-Connect's incorrect legal conclusion about the application and
         violation of 40 C.F.R. § 1054.645 causes its complaint to fail the
         plausibility test. ......................................................................................4

    B.    The Court cannot determine the basis of Gen-Connect's Chapter
         93A claim without deciding an issue squarely within the EPA's
         primary jurisdiction—a question Gen-Connect has already brought
         to the EPA's attention. ...........................................................................6

    C.    Even if US Carburetion violated 40 C.F.R. § 1054.645, Gen-
         Connect's Chapter 93A claim fails as a matter of law. ...................9

        1.    Gen-Connect's Chapter 93A claim fails because it is
             premised on a mere technical violation; mere technical
             violations fall outside the scope of Chapter 93A, especially
             under Section 11. ......................................................................9

        2.    Gen-Connect's Chapter 93A claim also fails because it is
             premised on an incompatible regulation..............................13

             a)    Chapter 93A claims may not be predicated on laws
                 with incompatible purposes and enforcement
                 mechanisms...................................................................13

             b)    Chapter 93A recovery would upset Congress's
                 intended balance of interests under the Clean Air Act. ........15

        3.    Gen-Connect flouts Section 11's heightened prerequisite to
             plead facts plausibly showing US Carburetion's purported
             conduct occurred "primarily and substantially" in
             Massachusetts. ......................................................................17

IV.    CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envtl. Prot.*,
   163 F.3d 74 (1st Cir. 1998)............................................................................7, 8

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.*,
   196 F.3d 302 (1st Cir. 1999)...............................................................................7

*Baker v. Goldman, Sachs & Co.*,
   771 F.3d 37 (1st Cir. 2014)...........................................................................14, 15

*Bell v. Cheswick Generating Station*,
   734 F.3d 188 (3d Cir. 2013) ...............................................................................16

*Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*,
   406 Mass. 7, 545 N.E.2d 1156 (1989) ................................................................12

*Boyle v. Zurich Am. Ins. Co.*,
   472 Mass. 649, 36 N.E.3d 1229 (2015) .............................................................12

*Com. of Mass. v. Blackstone Valley Elec. Co.*,
   67 F.3d 981 (1st Cir. 1995).................................................................................7

*Delta Air Lines, Inc. v. Export–Import Bank of United States*,
   85 F. Supp. 3d 250 (D.D.C. 2015).....................................................................13

*DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*,
   770 F. Supp. 2d 497 (E.D.N.Y. 2011) ................................................................16

*Duclersaint v. Fed. Nat. Mortg. Ass'n*,
   427 Mass. 809, 696 N.E.2d 536 (1998) ...............................................................6

*Evergreen Partnering Group, Inc. v. Pactiv Corp.*,
   No. 11-10807-RGS, 2014 WL 304070 (D. Mass. Jan. 28, 2014) .......................18

*Fishman Transducers, Inc. v. Paul*,
   684 F.3d 187 (1st Cir. 2012)...............................................................................19

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012) .........................................................................17

*Framingham Auto Sales, Inc. v. Workers' Credit Union,*
   41 Mass. App. Ct. 416, 671 N.E.2d 963 (1996) ...................................................10

*Gill v. JetBlue Airways Corp.,*
   836 F. Supp. 2d 33 (D. Mass. 2011)...................................................................8

*Grabowski v. Bank of Boston,*
   997 F. Supp. 111 (D. Mass. 1997) ....................................................................11

*Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc.,*
   No. 12-CV-11121-DJC, 2013 WL 5550673 (D. Mass. Sept. 23, 2013) ..........................5, 18

*Incase Inc. v. Timex Corp.,*
   488 F.3d 46 (1st Cir. 2007)...............................................................................9

*Int'l Paper Co. v. Ouellette,*
   479 U.S. 481 (1987)........................................................................................16

*Kozaryn v. Ocwen Loan Servicing, LLC,*
   784 F. Supp. 2d 100 (D. Mass. 2011)..................................................................10

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.,*
   781 N.E.2d 787 (Mass. 2003) ...........................................................................18

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
   453 U.S. 1 (1981)...........................................................................................15

*Moneypenny v. Metropolitan Life Ins., Co.,*
   No. 01-5525, 2002 WL 34496637 (Mass. Super. Oct. 21, 2002)..............................8

*Morris v. BAC Home Loans Servicing, LP,*
   775 F. Supp. 2d 255 (D. Mass. 2011)..................................................................14

*New England Gen-Connect, LLC v. Central Maine Diesel, Is, Inc.,*
   1:16-cv-12096-NMG (D. Mass. Oct. 19 2016) ....................................................1

*New England Gen-Connect, LLC v. Smart Generators, LLC,*
   1:16-cv-12393-ADB (D. Mass. Nov. 23, 2016) ...................................................1

*New England Gen-Connect, LLC v. US Carburetion, Inc.,*
   No. 1:14-cv-13530-IT (D. Mass. Oct. 28, 2014) ..................................................1

*Ording v. BAC Home Loans Servicing, LP,*
   No. CIV.A. 10-10670-MBB, 2011 WL 99016 (D. Mass. Jan. 10, 2011) .......................1

*Palmer Foundry, Inc. v. Delta-HA, Inc.,*
 319 F. Supp. 2d 110 (D. Mass. 2004).............................................................................7

*Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.,*
 No. 13-11302-NMG, 2014 WL 1203106 (D. Mass. 2014)..................................................18

*Shaanxi Jinshan TCI Elecs. Corp. v. FleetBoston Fin. Corp.,*
 61 Mass. App. Ct. 41, 807 N.E.2d 180 (2004) ..................................................................10

*Silva v. Steadfast Ins. Co.,*
 87 Mass. App. Ct. 800, 35 N.E.3d 401 (2015) ..................................................................10

*Smartling, Inc. v. Easyling LLC,*
 No. 1:14-CV-13106-ADB, 2016 WL 913142 (D. Mass. Mar. 9, 2016).............................13

*Spinal Imaging Inc. v. State Farm Mut. Auto. Ins. Co.,*
 No. CIV.A. 12-11498-RWZ, 2013 WL 1755200 (D. Mass. Apr. 24, 2013) ........................9

*In re St. Jude Med., Inc.,*
 425 F.3d 1116 (8th Cir. 2005) .........................................................................................17

*USM Corp. v. Arthur D. Little Sys., Inc.,*
 546 N.E.2d 888 (Mass. App. Ct. 1989) ..............................................................................9

*Washington Envtl. Council v. Bellon,*
 732 F.3d 1131 (9th Cir. 2013) .........................................................................................11

*Weitzel v. Travelers Ins. Companies,*
 417 Mass. 149, 627 N.E.2d 926 (1994) ..............................................................................7

*Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.,*
 No. 14-CV-12047-ADB, 2015 WL 4467064 (D. Mass. July 20, 2015) ...............................9

*Zabilansky v. Am. Bldg. Restoration Prod., Inc.,*
 No. 200101985, 2004 WL 2550458 (Mass. Super. Oct. 13, 2004) .............................10, 14

**Statutes**

42 U.S.C. § 7401 ...............................................................................................................14

42 U.S.C. § 7604 ........................................................................................................ *passim*

42 U.S.C. § 7604(a)(1) .........................................................................................................2

42 U.S.C. § 7604(e).......................................................................................................16, 17

42 U.S.C. § 7604(g) ............................................................................................................2

G.L. c. 93A ................................................................................................... *passim*

G.L. c. 93A, § 11 .......................................................................................... *passim*

**Regulations**

40 C.F.R. § 1054.645 ................................................................................... *passim*

40 C.F.R. § 1068.125 ...................................................................................2, 8, 14

**Other Authorities**

Control of Emissions From Nonroad Spark-Ignition Engines and
    Equipment, 73 Fed. Reg. 59034-01, 2008 WL 4488108 (Oct. 8, 2008) ..............................5

EPA website, https://www.epa.gov/noi/notices-intent-sue-us-
    environmental-protection-agency-documents (accessed Jan. 16, 2017) .........................1

*Massachusetts General Laws Chapter 93a, Section 11: The Evolution of the
    "Raised Eyebrow" Standard*, 36 Suffolk U. L. Rev. 139 (2002) ...........................................9

## I.    INTRODUCTION

Plaintiff New England Gen-Connect, LLC ("Gen-Connect") embroils its

purported competitor Defendant US Carburetion, Inc. ("US Carburetion") in litigation,

claiming US Carburetion sells energy "kits" or "products" (collectively "products")

without certificates of conformity required by EPA regulation, 40 C.F.R. § 1054.645. In

doing so, Gen-Connect seeks to enforce an EPA regulation US Carburetion has not

violated, demands relief under an inapplicable statute, and misuses federal courts to

stifle competition.

Gen-Connect interprets the relatively recent EPA regulation, 40 C.F.R. § 1054.645,

with no associated extant advisory opinions, to mean that US Carburetion's products,

and those of other competitors,[1] violate the new rule, and that Gen-Connect can sue to

recover privately for such violations under Chapter 93A. However, Gen-Connect is the

wrong party, and Chapter 93A is the wrong vehicle for relief. Congress and the EPA

mandate that enforcement and recovery for such a violation "*must* be brought by and in

---

[1] The court may consider official public records on a motion to dismiss. *Ording v. BAC Home Loans Servicing, LP*, No. CIV.A. 10-10670-MBB, 2011 WL 99016, at *4 (D. Mass. Jan. 10, 2011). Gen-Connect has sued, within a month of each other, at least two of its other competitors in nearly identical lawsuits for the same reasons. *See New England Gen-Connect, LLC v. Central Maine Diesel, Is, Inc.*, 1:16-cv-12096-NMG (D. Mass. Oct. 19 2016); *New England Gen-Connect, LLC v. Smart Generators, LLC*, 1:16-cv-12393-ADB (D. Mass. Nov. 23, 2016). Gen-Connect also reported at least *five* of its competitors to the EPA for the same reasons, and when the EPA did not act as demanded, Gen-Connect threatened to sue the EPA for inaction. EPA website, https://www.epa.gov/noi/notices-intent-sue-us-environmental-protection-agency-documents (accessed Jan. 16, 2017). Around the same time, this Court dismissed another case by Gen-Connect against US Carburetion for patent infringement, also attempting to bring state tort claims. *See New England Gen-Connect, LLC v. US Carburetion, Inc.*, No. 1:14-cv-13530-IT (D. Mass. Oct. 28, 2014) (dismissed Nov. 3, 2016).

the name of the United States." 40 C.F.R. § 1068.125 (emphasis added). The regulation

mandates a specific administrative and judicial review process for enforcement. *Id.*

While the Clean Air Act contains a general citizen suit provision, a blunt

instrument for unspecified Clean Air Act violations, Gen-Connect *never* brought such a

suit, which forbids a plaintiff from any monetary recovery. *See* 42 U.S.C. § 7604(a)(1),

(g). The citizen suit provision also permits states to regulate air quality without risk of

federal preemption, but that provision never authorized recovery under Chapter 93A-

type claims. *See infra* Part C.2. This lawsuit subverts the EPA's tailored adjudicative

process for 40 C.F.R. § 1054.645 violations, contravenes the plain language of the

regulation, and risks an inconsistent EPA interpretation—particularly because so far the

EPA has issued no administrative decisions despite that Gen-Connect reported at least

five of its competitors to the EPA for the same purported 40 C.F.R. § 1054.645 violation.

*See supra* Footnote 1. The interpretation at issue in this case fits squarely within the

EPA's primary jurisdiction.

Even *if* Gen-Connect enjoyed a private right of action under Chapter 93A, its

amended complaint fails the plausibility test. Gen-Connect's *sole basis* for alleging a

Chapter 93A violation is that US Carburetion failed to obtain a certificate of conformity

under 40 C.F.R. § 1054.645 prior to selling its product—a recent, technical EPA

requirement subject to differing interpretations and no administrative guidance. But

mere technical violations are *not* covered under Chapter 93A, especially for Section 11

business plaintiffs who must "show a much more egregious or oppressive practice than

a consumer plaintiff." Nor may Gen-Connect premise its Chapter 93A allegation on a plainly inapposite EPA regulation.

Moreover, Gen-Connect flouts Section 11's heightened geographic prerequisite that a defendant's conduct occur "primarily and substantially" in Massachusetts. Gen-Connect's *factual* allegations at bottom are: that US Carburetion, a West Virginia company selling alternate fuel products throughout the country, sold some of them in Massachusetts, offering itself as sole example. But Gen-Connect sues as competitor for lost profits, not as consumer under any unfair or deceptive conduct; Gen-Connect does not compete for its own business with US Carburetion. Even if US Carburetion's contacts in Massachusetts were equal, Gen-Connect's Chapter 93A claim still fails the heightened prerequisite as a matter of law.

## II.   PLAINTIFF'S FACTUAL ALLEGATIONS

According to the complaint, Defendant US Carburetion, a West Virginia corporation, and Plaintiff Gen-Connect, a Massachusetts corporation, advertise and sell competing alternate fuel energy products. Am. Compl. ¶¶ 1–2, 31, 33. These products, or so-called "conversion kits," allow gasoline generators to also run on propane or natural gas. Am. Compl. ¶ 9; Ex. 1 to Am. Compl. Gen-Connect reported US Carburetion, and other competitors to the EPA, and sued them privately, because they did not receive "certificates of compliance" from the EPA prior to selling their products—then Gen-Connect threatened to sue the EPA for inaction when it did not act as demanded. Am. Compl. ¶ 26; *see supra* Footnote 1. Specifically, Gen-Connect alleges US Carburetion: (1) designs its products to convert an engine into alternate fuel, (2) sells

"do-it-yourself" kits for purchasers to convert engines into alternate fuel, (3) accepts

and converts generators from others into alternate fuel, and (4) sells energy products

labelled "MOTOR SNORKEL INSTALLED"—all without a certificate of conformity as

required by 40 C.F.R. § 1054.645. Am. Compl. ¶¶ 13–16; Exs. 1–2 to Am. Compl. Doing

so purportedly puts Gen-Connect at a competitive disadvantage and causes it financial

damage. Am. Compl. ¶¶ 31–33.

## III.    ARGUMENT

Gen-Connect enjoys no private right of action under Chapter 93A for the alleged

40 C.F.R. § 1054.645 violation, and if it did, Gen-Connect's factual allegations do not

entitle it to relief as a matter of law.

### A.    Gen-Connect's incorrect legal conclusion about the application and violation of 40 C.F.R. § 1054.645 causes its complaint to fail the plausibility test.

A court determines whether a complaint should be dismissed using a "two-step

approach," looking beyond legal conclusions and threadbare recitals of elements,

focusing on the actual facts alleged:

> Post-*Twombly* and *Iqbal,* whether a complaint should survive a motion to
> dismiss depends upon whether the pleading satisfies the "plausibility"
> standard. As the First Circuit has made clear, in resolving a motion to
> dismiss, a court should employ a two-step approach. It should begin by
> identifying and disregarding statements in the complaint that merely offer
> legal conclusions couched as fact or threadbare recitals of the elements of
> a cause of action. A plaintiff is not entitled to "proceed perforce" by virtue
> of allegations that merely parrot the elements of the cause of action. The
> remaining non-conclusory factual allegations in the complaint must be
> then treated as true, even if seemingly incredible and assessed to
> determine whether they allow the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged. If they do, the
> claim has facial plausibility. The make-or-break standard is that the

combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.

*Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc.*, No. 12-CV-11121-DJC, 2013 WL

5550673, at *2 (D. Mass. Sept. 23, 2013) (internal citation and punctuation omitted).

Gen-Connect's amended complaint is solely premised on its belief that US

Carburetion must receive certificates of conformity pursuant to 40 C.F.R. § 1054.645 to

stay in business, and that without these certificates, US Carburetion violates the EPA's

regulation. *See, e.g.*, Am. Compl. ¶¶ 9–26. However, the EPA has not yet issued *any*

administrative decisions interpreting and describing the scope of 40 C.F.R. § 1054.645,

effective December 2008. Looking at its plain language, although entities "producing

conversion kits" are included within the regulation, the provision actually describing its

scope prescribes that it only "applies if *such modifications are done* to convert the engine

to run on a different fuel type." A reasonable interpretation of that statement is that

only entities actually *making* the modifications to the engine to convert its fuel fall

within its purview, *i.e.*, actually applying the kit to the engine. This interpretation is

corroborated by the legislative history which explains its concerns for the person

actually "performing" the fuel conversion. *See* Control of Emissions From Nonroad

Spark-Ignition Engines and Equipment, 73 Fed. Reg. 59034-01, 2008 WL 4488108 (Oct. 8,

2008). There also appears to be no applicable definition of what constitutes a

"conversion kit" or "producing" a "conversion kit."[2]

---

[2] While this interpretation leaves one of Gen-Connect's allegations remaining—that US Carburetion accepts and converts generators that are used or new but bought elsewhere and otherwise sells new converted generators, *see* Am. Compl. ¶¶ 14, 16 (Plaintiff's

At best, this is a "genuine difference of opinion" about the application of a regulation to a given situation, which is not a proper basis for Gen-Connect's Chapter 93A claim. *See Duclersaint v. Fed. Nat. Mortg. Ass'n*, 427 Mass. 809, 814, 696 N.E.2d 536, 540 (1998) (finding Chapter 93A claim inappropriate where there was a "genuine difference of opinion" about the application of a Massachusetts statute). Perhaps this is the reason Gen-Connect has found itself challenging so many of its competitors. *See supra* Footnote 1.

Such a genuine dispute about the interpretation of the EPA regulation militates toward EPA referral pursuant to its primary jurisdiction.

**B.    The Court cannot determine the basis of Gen-Connect's Chapter 93A claim without deciding an issue squarely within the EPA's primary jurisdiction—a question Gen-Connect has already brought to the EPA's attention.**

The United States Supreme Court and the First Circuit have long recognized the need for Article III courts and administrative agencies to coordinate to provide

---

Exhibit 2 evidences that ¶ 14 and ¶ 16 are the same allegation)—that allegation fails to allege that those particular engines or generators did not *already have* conforming certificates of compliance from the previous manufacturers, dealers, or owners, or provide any examples of consumers in Massachusetts besides itself, who sues as competitor not consumer. EPA regulation 40 C.F.R. § 1054.645 only forbids selling such engines if they are not already covered by an existing certificate of conformity. The certificate requirement corresponds with the engine, not the person or entity from which it is sold. Gen-Connect's intimation in Paragraph 14 that *many* of US Carburetion's products come "Motor Snorkel Installed" by US Carburetion is bellied by Exhibit 1 to the amended complaint, which *evidences* that the products are sold with "*do-it-yourself*" installation. Gen-Connect further *evidences* US Carburetion's "do-it-yourself" business model by adducing US Carburetion's website in Paragraph 4 of the amended complaint, which reveals that US Carburetion's "only association with generators and engines is that [it] provide[s] change over kits from gasoline to propane and natural gas."

"consistent and coherent" policies through the doctrine of primary jurisdiction. *Am. Auto. Mfrs. Ass'n v. Massachusetts Dep't of Envtl. Prot.*, 163 F.3d 74, 80–81 (1st Cir. 1998) (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 68, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)); *see also Weitzel v. Travelers Ins. Companies*, 417 Mass. 149, 152–53, 627 N.E.2d 926, 927–28 (1994) ("The doctrine of primary jurisdiction promotes the proper relationships between the courts and administrative agencies charged with regulatory duties."). A referral to an agency is appropriate where an issue fits within the special competence of an agency, and gives the parties a reasonable opportunity to seek an administrative ruling. *Id.*; *Palmer Foundry, Inc. v. Delta-HA, Inc.*, 319 F. Supp. 2d 110, 112–13 (D. Mass. 2004). Referral is appropriate even where other contested issues in the case not implicating agency review remain. *See Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot.*, 196 F.3d 302, 304 (1st Cir. 1999).

The First Circuit relies on three factors to determine whether referral and deference to an agency is appropriate: "(1) whether the agency determination lies at the heart of the task assigned the agency by Congress; (2) whether agency expertise is required to unravel intricate, technical facts; and (3) whether . . . the agency determination would materially aid the court." *Am. Auto. Mfrs. Ass'n*, 163 F.3d at 180–81 (internal punctuation omitted) (citing *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 580 (1st Cir.1979)). "More generally, the First Circuit also considers the need for national uniformity in the interpretation and application of a federal regulatory regime." *Palmer Foundry*, 319 F. Supp. 2d at 13 (internal quotation omitted); *see also Am. Auto. Mfrs. Ass'n*, 163 F.3d at 80–81 (referring to EPA for interpretation of Clean Air Act); *Com. of*

*Mass. v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 992 (1st Cir. 1995) (referring to EPA for interpretation of environmental federal statute implicating Clean Air Act). A court referring an issue to the EPA may dismiss the case without prejudice or stay the proceeding. *Am. Auto. Mfrs. Ass'n*, 163 F.3d at 82.

Here, the issue of whether US Carburetion and other competitors are required by 40 C.F.R. § 1054.645 to obtain "certificates of conformity" for engines and generators prior to selling alternate fuel products that are entirely separate from them is at the heart of this litigation. *E.g.*, Am. Compl. ¶¶ 9–13, 26. It concerns the very basis for Gen-Connect's Chapter 93A claim, and there is no question that the EPA weighing in on the interpretation of its own regulation will materially aid the Court in determining whether there is any underlying basis for the lawsuit in the first place. That Gen-Connect has recently accused at least five competitors and reported them to the EPA for enforcement only reinforces the need to defer to the EPA to avoid inconsistent decisions, elucidate confusion, and properly defer to the agency to which authority has been given to enforce and adjudicate the specific violation. *See* 40 C.F.R. § 1068.125 ("What happens if I violate the regulations?").[3]

---

[3] Additionally, it is at least possible that what could ultimately become an inconsistent interpretation of the regulation could risk implied preemption of the common law created. *See, e.g.*, *Moneypenny v. Metropolitan Life Ins., Co.*, No. 01-5525, 2002 WL 34496637 (Mass. Super. Oct. 21, 2002) ("[P]reemption will lie only if the federal regulations substantially subsume that subject matter."); *Gill v. JetBlue Airways Corp.*, 836 F. Supp. 2d 33, 45 (D. Mass. 2011) (recognizing field preemption for some tort claims by looking at the pervasiveness of the federal regulations in the specific area covered).

**C.    Even if US Carburetion violated 40 C.F.R. § 1054.645, Gen-Connect's Chapter 93A claim fails as a matter of law.**

Gen-Connect alleges a Chapter 93A violation under Section 11 of the statute. Am. Compl. ¶¶ 38. Finding the boundary for what conduct qualifies as a Chapter 93A violation presents a question of law. *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 56–57 (1st Cir. 2007). A plaintiff asserting a Section 11 violation must cross a higher threshold for showing a Chapter 93A violation than a Section 9 plaintiff, applicable only to consumers. Among businesses, the legislature never contemplated "an overly precious standard of ethical or moral behavior." *USM Corp. v. Arthur D. Little Sys., Inc.*, 546 N.E.2d 888, 897 (Mass. App. Ct. 1989); *Massachusetts General Laws Chapter 93a, Section 11: The Evolution of the "Raised Eyebrow" Standard*, 36 Suffolk U. L. Rev. 139 (2002) ("[T]o prevail on a Chapter 93A claim, a business plaintiff would have to show a much more egregious or oppressive practice than a consumer plaintiff."). Therefore, a complaint asserting a Section 11 violation should be dismissed if it fails to describe the conduct that rises to this heightened Chapter 93A violation.[4]

**1.    Gen-Connect's Chapter 93A claim fails because it is premised on a mere technical violation; mere technical violations fall outside the scope of Chapter 93A, especially under Section 11.**

Failure to obtain a certificate under 40 C.F.R. § 1054.645 falls outside the scope of Chapter 93A protection as a matter of law, particularly for a Section 11 business plaintiff

---

[4] *See e.g.*, *Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd.*, No. 14-CV-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015) (dismissing Chapter 93A after closely analyzing alleged facts in complaint and finding that, without conclusory statements "devoid of further factual enhancement," the claim did not rise to a Chapter 93A

where conduct must be "much more egregious or oppressive" than for a Section 9 consumer plaintiff. Courts hold: even if a violation of a particular statute could be used as evidence of the violation, a mere "technical" violation does not suffice because the statute targets more cynical conduct, with commensurate relief. *See Zabilansky v. Am. Bldg. Restoration Prod., Inc.*, No. 200101985, 2004 WL 2550458, at *16 (Mass. Super. Oct. 13, 2004), *aff'd*, 67 Mass. App. Ct. 1106, 853 N.E.2d 221 (2006) (finding "technical violation" of EPA registration requirement is not violation of Chapter 93A); *Silva v. Steadfast Ins. Co.*, 87 Mass. App. Ct. 800, 804, 35 N.E.3d 401, 406, *review denied*, 473 Mass. 1103, 40 N.E.3d 553 (2015) (granting summary judgment in favor of defendant, *inter alia*, because a violation of a different Massachusetts unfair deceptive statute under Chapter 176D is not a violation of Section 11 of Chapter 93A); *Framingham Auto Sales, Inc. v. Workers' Credit Union*, 41 Mass. App. Ct. 416, 418, 671 N.E.2d 963, 965 (1996) ("[A] *mere breach of a legal obligation* under commercial law, without more, *does not* amount to an unfair or deceptive act under G.L. c. 93A.") (emphasis added); *Shaanxi Jinshan TCI Elecs. Corp. v. FleetBoston Fin. Corp.*, 61 Mass. App. Ct. 41, 49, 807 N.E.2d 180, 187 (2004) (finding bank that wrongfully dishonored a letter of credit had not violated Chapter 93A because more is required than "a mere breach of a legal obligation").

This proposition remains true even at the motion to dismiss stage. *See, e.g.*, *Kozaryn v. Ocwen Loan Servicing, LLC*, 784 F. Supp. 2d 100, 100 (D. Mass. 2011) (dismissing Chapter 93A claim premised on violation of federal Truth in Lending Act

---

violation); *Spinal Imaging Inc. v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 12-11498-RWZ, 2013 WL 1755200, at *3 (D. Mass. Apr. 24, 2013).

because the plaintiff only pleaded a HAMP violation without requisite facts supporting

unfair and deceptive violation); *Grabowski v. Bank of Boston*, 997 F. Supp. 111, 129 (D.

Mass. 1997) (dismissing Chapter 93A claim because violation of power of attorney at

best only involved mere negligence, which is not sufficient for a Chapter 93A claim).

In this case, Gen-Connect's *sole basis* for alleging its heightened Section 11

Chapter 93A violation is that US Carburetion failed to obtain a certificate of conformity

under 40 C.F.R. § 1054.645 prior to selling its products—a technical EPA requirement

recently imposed on Gen-Connect and competitors, subject to differing interpretations

with no administrative guidance or EPA corroboration. *See* Am. Compl. ¶¶ 8–38; *supra*

Part A.

That Gen-Connect speculates, in its amended complaint, that US Carburetion's

purported failure to obtain a certificate somehow harms the public and environment

through increased pollution, and causes serious injury, "if not death"—changes

nothing. *See* Am. Compl. ¶¶ 11, 12, 21. First, Gen-Connect sues as a competitor for lost

profits under Section 11, not for injury as a consumer under Section 9. *E.g.*, Am. Compl.

¶¶ 31–33. Second, courts readily reject such speculative and attenuated pleadings; Gen-

Connect's speculation is not plausible where Gen-Connect also alleges the product *by its*

*very design* modifies a gasoline-fueled engine to run on natural gas or propane—the

plausible effect, if any, *reduces* pollution. *See* Am. Compl. ¶ 9; Ex. 1 to Am. Compl.

(describing same); *see Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1141–42 (9th

Cir. 2013) (explaining a plaintiff cannot state a claim for relief where pleaded

consequence of conduct is hypothetical, tenuous, or implausible, or the pleaded causal

chain involves the collective effect of numerous third parties). Ultimately, the EPA requirement is as it sounds, a technical requirement; indeed US Carburetion has been selling many of the same products of which Gen-Connect complains for over 22 years, well before Gen-Connect entered the market and well before the EPA promulgated 40 C.F.R. § 1054.645. *See* Ex. 1 to Am. Compl.

In fact, Gen-Connect fails to allege any *actual facts* plausibly showing evidence of bad faith or ulterior motive—nothing beyond "mere negligence" for failing to obtain certificates of conformity prior to sale. *See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 406 Mass. 7, 14, 545 N.E.2d 1156, 1160 (1989) (finding no Chapter 93A violation where there was no evidence, or factually supported claim, of bad faith or ulterior motive); *Boyle v. Zurich Am. Ins. Co.*, 472 Mass. 649, 661, 36 N.E.3d 1229, 1241 (2015) ("Mere negligence ordinarily does not represent an unfair or deceptive act."). Gen-Connect is *only remotely relevant* to US Carburetion's alleged technical violation by *attenuated inference* as purported competitor, located in a different part of the country. Am. Compl. ¶¶ 1–2, 19–20, 31–33, 38. Gen-Connect alleges no facts that indicate that consumers are *even aware* of the certificate of conformity requirement—much less would have chosen Gen-Connect's products instead for this reason. Gen-Connect even fails to allege which of its products purportedly compete with US Carburetion's products at issue, or that they are substantially similar (including US Carburetion's patented energy products)—only that Gen-Connect sells products that require certificates of conformity. *See* Am. Compl. ¶¶ 31–33; Ex. 3 to Am. Compl. Gen-Connect also fails to identify a single consumer for which it would have competed—much less one in Massachusetts.

12

*See infra* Part C.3. Thus, Gen-Connect has no standing to bring its Chapter 93A claim, even under the "competitor standing doctrine." *See Katin v. Nat'l Real Estate Info. Servs., Inc.*, No. CIV. A. 07-10882DPW, 2009 WL 929554, at *5 (D. Mass. Mar. 31, 2009) (stating a plaintiff cannot rely on an abstract injury of "illegal competition," which turns on "the likelihood and imminence of a particular type of actual economic injury"); *Delta Air Lines, Inc. v. Export–Import Bank of United States*, 85 F. Supp. 3d 250, 267 (D.D.C. 2015) (no standing where pleaded injury to competition is "indeterminable and amorphous").

Gen-Connect cannot plausibly show under these facts that US Carburetion *not only* acted unfairly or deceptively toward Gen-Connect through the technical EPA violation claimed, but that the violation was *so* unfair or deceptive that it triggered Section 11's heightened threshold for "much more egregious or oppressive" conduct. Gen-Connect's Section 11 claim fails as a matter of law.[5]

## 2. Gen-Connect's Chapter 93A claim also fails because it is premised on an incompatible regulation.

### a) Chapter 93A claims may *not* be predicated on laws with incompatible purposes and enforcement mechanisms.

Dismissal of Plaintiff's Section 11 claim is even more compelling because the objectives and enforcement mechanisms involved in the EPA regulatory and statutory scheme do not align with those of Chapter 93A. A plaintiff may only recover under

---

[5] If anyone, Gen-Connect acted unfairly toward US Carburetion, bullying competition and seeking to profit from industry confusion. *Compare supra* Footnote 1, *with Smartling, Inc. v. Easyling LLC*, No. 1:14-CV-13106-ADB, 2016 WL 913142, at *2-3 (D. Mass. Mar. 9, 2016) (denying motion to dismiss defendant's Section 11 Chapter 93A counterclaim that the legal system was used to interfere with defendant's prospective business relationships and to gain a competitive advantage).

Chapter 93A for the violation of another statute where the underlying statute is "compatible with the objectives and enforcement mechanisms" of Chapter 93A. *Morris v. BAC Home Loans Servicing, LP*, 775 F. Supp. 2d 255, 260–61 (D. Mass. 2011); *see Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 55-57 (1st Cir. 2014) (finding a Massachusetts regulation could not serve as the basis for the Section 11 Chapter 93A claim because the Massachusetts Attorney General likely promulgated that regulation with consumers "in mind" under Section 9 rather than Section 11 of Chapter 93A).

The purpose of Chapter 93A "is to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace"; injured business plaintiffs may bring claims for such a violation under Section 11 and recover up to treble damages, attorney's fees, costs, and broad equitable relief. *Zabilansky*, No. 200101985, 2004 WL 2550458, at *13; G.L. c. 93A, § 11. In stark contrast, the primary purpose of the Clean Air Act, the authoritative statute creating 40 C.F.R. § 1054.645, is to prevent pollution in the environment. 42 U.S.C. § 7401. The enforcement mechanism for the EPA regulation at issue lies through a prescribed administrative process before the EPA brought by and in the name of the United States for a civil penalty and injunctive relief. 40 C.F.R. § 1068.125 ("What happens if I violate the regulations?"). In considering the penalty, the EPA weighs a number of factors including, *inter alia,* the size of the business, the seriousness of the violation, and the benefit to the business. *Id.*

The Clean Air Act's general citizen suit provision, 42 U.S.C. § 7604, a blunt instrument for unspecified Clean Air Act violations, forbids *any* compensatory relief,

and Gen-Connect has not proceeded under this claim. Although 42 U.S.C. § 7604 also

allows states to regulate their own air quality without general preemptive effect,

Massachusetts *never* espoused any certificate of conformity requirement for alternate

fuel conversion kits, such as those at issue in this case. The Massachusetts legislature

enacted Chapter 93A for wholly inapposite reasons, an enactment, in fact, predating the

present citizen suit provision. Indeed, if the First Circuit refused to consider, under

Section 11 of Chapter 93A, a Massachusetts regulation *specifically intended* for Chapter

93A claims—because the regulation was more likely intended for Section 9

consumers—certainly the EPA's certificate of conformity regulation, promulgated for

air quality, should not serve as the basis for Defendant's Section 11 unfair competition

claim against US Carburetion. *See Baker v. Goldman, Sachs & Co.*, 771 F.3d 37, 55-57 (1st

Cir. 2014). This is not the type of statute Chapter 93A should augment with private

rights of action and opportunities for significant recovery.

   **b)     Chapter 93A recovery would upset Congress's intended
            balance of interests under the Clean Air Act.**

   No court throughout the country has recognized a Chapter 93A-like claim

predicated on a failure to obtain a certificate of conformity—nor has one recognized

such a claim *solely* predicated on *any* analogous EPA regulation for that matter.

Allowing *any* law from *any* state to serve as a vehicle for relief for *any* EPA violation (no

matter how technical and extensive the EPA's regulations have become), without

respecting the underlying purposes behind the state enactments, would "encourage

frivolous or harassing suits against industries and government agencies." *See Middlesex*

*Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 17 n.27 (1981) (describing Congress's concern that a violation of the Clean Air Act should not warrant the type of significant recovery found in consumer protection statutes).

The Clean Air Act's citizen suit non-restriction clause is not a blank check; inapposite state claims disrupt Congress's intended balance of interests and invoke "obstacle preemption." Few courts have faced the interplay between the Clean Air Act's 42 U.S.C. § 7604(e) non-restriction clause (or a similar non-restriction clause) and a related state claim; those that have, proceed cautiously in light of policy concerns. One of the few claims tested is a state's nuisance claim. Courts allow state nuisance claims only in the state in which the source of pollution is located because, *inter alia*: state nuisance claims have historically been tied to environmental violations, restricting state nuisance claims to the source state "prevents a source from being subject to an indeterminate number of potential regulations," and although a state claim may "create some tension" with the federal system through differing standards, the restriction promotes predictability with just one additional authority with which to comply, and because states often consider existing laws when enacting new ones. *See, e.g., Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 498–99 (1987); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 197–98 (3d Cir. 2013); *see also DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 518 (E.D.N.Y. 2011) (describing generally the difference between obstacle preemption and field preemption where a statute contains a "savings clause").

Here, Chapter 93A claims have *not* historically been tied to environmental violations, and allowing Chapter 93A to serve as a vehicle for a 40 C.F.R. § 1054.645

violation, where US Carburetion sells its products throughout the country, causes

unpredictability because states have enacted their own anti-competition and consumer

protection statutes with varying scopes, standards, requirements, and remedies. *See,*

*e.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) ("State consumer-

protection laws vary considerably, and courts must respect these differences rather than

apply one state's law to sales in other states with different rules."); *In re Flonase Antitrust*

*Litig.*, 284 F.R.D. 207, 213 (E.D. Pa. 2012) (recognizing differences in state antitrust

claims); Ex. 3 to Am. Compl. ("The free shipping offer is . . . to the lower 48 states. Free

shipping offer not valid for those in Alaska or Hawaii . . . ."); Ex. 1 to Am. Compl.

Moreover, allowing any state law—irrespective of purpose—to act as a vehicle

for any technical EPA violation, considering the breadth and complexity of the EPA's

regulations, patently upsets the balance struck under the Clean Air Act, which would

inundate federal courts and substantially increase the target on a business's back.

Congress allowed Massachusetts, through 42 U.S.C. § 7604(e), to target air pollution

within its borders by imposing its own certificate requirements and corresponding

remedies. But Massachusetts enacted Chapter 93A and its remedies for plainly different

reasons. In fact, Chapter 93A predates Congress's Clean Air Act amendment creating

the present citizen suit provision. Gen-Connect's claim should be dismissed.

### 3.      Gen-Connect flouts Section 11's heightened prerequisite to plead facts plausibly showing US Carburetion's purported conduct occurred "primarily and substantially" in Massachusetts.

Gen-Connect's factual allegations fail the Section 11 prerequisite that the unfair

or deceptive acts occurred "primarily and substantially" in Massachusetts as a matter of

law. The Massachusetts Supreme Judicial Court adopted the "center of gravity" test to determine whether the prerequisite is satisfied, but has refrained from determining whether it is even appropriate for a court "to decide [Section 11] cases involving wrongful conduct in multiple jurisdictions based on which jurisdiction was the source of the most instances of misconduct." *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 799 (Mass. 2003).

In the face of obvious failures to satisfy the Section 11 prerequisite, courts can and do dismiss Chapter 93A claims at the pleadings stage. *See, e.g., Evergreen Partnering Group, Inc. v. Pactiv Corp.*, No. 11-10807-RGS, 2014 WL 304070, at *4-5 (D. Mass. Jan. 28, 2014) (dismissing Section 11 claim where plaintiff corporation was located in Massachusetts and claimed to be injured in Massachusetts, but the alleged conduct suggests only "some" unlawful acts occurred in Massachusetts—and with its only functioning facility out of state); *Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc.*, No. 12-CV-11121-DJC, 2013 WL 5550673, at *3 (D. Mass. 2013) (dismissing Section 11 claim because plaintiff failed to allege that the unfair deceptive acts occurred "primarily and substantially within Massachusetts"); *Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc.*, No. 13-11302-NMG, 2014 WL 1203106, at *9 (D. Mass. 2014) (dismissing Section 11 claim because, although the plaintiff corporation was located in Massachusetts and claimed its loss there, the complaint pleaded insufficient details about the relevant locations—such as the location of the misconduct and location of resources used). Even where the plaintiff is a Massachusetts corporation claiming all of its harm occurred here, where the alleged misconduct occurred in other parts of the country as well and

the contacts are in "balance," that is not enough to bring a Section 11 claim. *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012).

Here, Gen-Connect's amended complaint legally concludes that it meets the "primarily and substantially" test, but its factual allegations militate otherwise. Gen-Connect pleads that: (1) US Carburetion is a West Virginia corporation; (2) US Carburetion solicits business through its website to Massachusetts citizens (even though if you follow the link alleged, it reveals a country-wide reach with a sole address in West Virginia); (3) US Carburetion is an "industry leader" in selling the complained of products (without any geographic qualifications); (4) US Carburetion violated the EPA regulation generally (without geographic qualifications); (5) Gen-Connect reported US Carburetion and other companies throughout the country to the EPA for the EPA violation (without any geographic qualifications); (6) US Carburetion's Chapter 93A violation has put Gen-Connect at a competitive disadvantage (without any geographic qualifications); (7) US Carburetion's Chapter 93A violation has harmed Gen-Connects "revenues and profits" (without geographic qualifications); and (8) US Carburetion sends advertisements directly to Gen-Connect in Massachusetts and sells products there (even though Gen-Connect sues in its capacity as a competitor, not a customer); Am. Compl. ¶¶ 2, 4, 9, 13, 15, 19–20, 26, 33, 17; *see supra* Footnote 1.

While Gen-Connect alleges that US Carburetion has advertised and sold its "products" in Massachusetts, *see* Am. Compl. ¶¶ 4, 15–18, and generally that US Carburetion "engaged in trade or commerce" there, *see* Am. Compl. ¶ 29, these facts do not plausibly show US Carburetion's purported conduct occurred "primarily and

substantially" in Massachusetts—with many allegations pointed to West Virginia and most allegations applying to business generally throughout the country. *See, e.g.*, Exs. 1, 3 to Am. Compl. ("The free shipping is . . . to the lower 48 states.").

Moreover, Gen-Connect fails to include a single exhibit, out of the six attached, where Massachusetts appears anywhere on the document.[6] The email advertisement and sale record exhibits Gen-Connect claims were sent in Massachusetts were addressed solely to Gen-Connect (or a Gen-Connect officer), who sues as a competitor; Gen-Connect fails to link a single consumer in Massachusetts for which Gen-Connect would have competed for business. *See* Exs. 3–5 to Am. Compl. Ultimately, Gen-Connect fails to plead sufficient facts that US Carburetion (located in West Virginia) committed Chapter 93A violations for failure to receive certificates of conformity from the EPA (headquartered in DC), that occurred "primarily and substantially" in Massachusetts—rather than anywhere else in the country in which its products are sold. Gen-Connect's Section 11 heightened prerequisite fails as a matter of law.

## IV.    CONCLUSION

For these reasons, US Carburetion asks this Court to grant its motion to dismiss Gen-Connect's amended complaint in its entirety.

---

[6] Notwithstanding the letter *from* Gen-Connect *to* US Carburetion, complaining of the purported certificate violation, *i.e.*, Gen-Connect's address. *See* Ex. 6 to Am. Compl.

Date: January 19, 2017                   Respectfully submitted,


                                         */s/ Benjamin P. Lajoie*
                                         Benjamin P. Lajoie, BBO # 693715
                                         blajoie@baileyglasser.com
                                         **BAILEY & GLASSER LLP**
                                         99 High Street, Suite 304
                                         Boston, MA 02110
                                         Telephone: (617) 439-6730
                                         Facsimile: (617) 951-3954

                                         Brian A. Glasser (admitted *pro hac vice*)
                                         bglasser@baileyglasser.com
                                         **BAILEY & GLASSER LLP**
                                         1054 31st Street, NW, Suite 230
                                         Washington, D.C. 20007
                                         Telephone: (202) 463-2101
                                         Facsimile: (202) 463-2103

                                         Marc R. Weintraub (admitted *pro hac vice*)
                                         mweintraub@baileyglasser.com
                                         **BAILEY & GLASSER LLP**
                                         360 Central Avenue, Suite 1500
                                         St. Petersburg, FL 33701
                                         Telephone: (727) 894-6745
                                         Facsimile: (727) 894-2649

                                         *Attorneys for Defendant US Carburetion, Inc.*

21

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on January 19, 2017.

*/s/ Benjamin Lajoie*
Benjamin Lajoie